IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Lamont Trent, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| -vs- | ) | No. _____ |
| | ) | |
| City of Chicago, Ryan Galiardo, | ) | *(jury demand)* |
| and Khaled Hasan, | ) | |
| | ) | |
| *Defendants*. | ) | |

# COMPLAINT

Plaintiff, by counsel, alleges as follows:

1. This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 and § 1367.

2. Plaintiff Lamont Trent is a resident of the Northern District of Illinois.

3. Defendants Ryan Galiardo and Khaled Hasan ("officer defendants") were, at all relevant times, acting under color of their offices as Chicago police officers; each is sued in his individual capacity only.

4. Defendant City of Chicago is an Illinois municipal corporation.

5. On February 4, 2019, the officer defendants stopped a motor vehicle in which plaintiff was a passenger in the vicinity of South Karlov Avenue and West Wilcox Street in Chicago.

6. The officer defendants had not observed the driver of the vehicle commit any criminal or traffic offense and the officer defendants did not possess any information that could have provided a lawful justification for stopping the vehicle.

7. After stopping the vehicle, defendant Galiardo told the driver that the officers stopped him for failing to properly use his turn signal.

8. Video recorded inside the officer defendants' police car shows that the driver properly and lawfully used his turn signal.

9. The officer defendants later claimed in official police reports that they had stopped the vehicle because of a stop sign violation.

10. Video recorded inside the officer defendants' police car shows that the driver made a full and complete stop and did not commit any stop sign violation.

11. The officer defendants arrested plaintiff after their illegal stop of the vehicle.

12. At the time of plaintiff's arrest:

    a. None of the officer defendants had a warrant authorizing the arrest of plaintiff;

    b. None of the officer defendants believed that a warrant had been issued authorizing the arrest of plaintiff;

    c. None of the officer defendants had observed plaintiff commit any offense; and

    d. None of the officer defendants had received information from any source that plaintiff had committed an offense or was otherwise subject to arrest.

13. As a result of the above-described misconduct, plaintiff was wrongfully detained and prosecuted.

14. After arresting plaintiff:

    a. One or more of the officer defendants prepared official police reports falsely asserting that the officers stopped the vehicle because of a stop sign violation and that plaintiff had been in unlawful possession of a firearm;

    b. One or more of the officer defendants attested to the false official police reports, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights; and

    c. One or more of the officer defendants communicated the false charge to prosecutors, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights.

15. As a result of the above-described wrongful acts, plaintiff was deprived of his liberty from the time of his arrest until the prosecutor learned of the defendant officers' falsehoods and dismissed the criminal charges on December 19, 2019 in a manner indicative of plaintiff's innocence.

16. At all relevant times, the City of Chicago has known and has encouraged a "code of silence" among its police officers.

17. As summarized by the United States Department of Justice in its official report entitled "Investigation of the Chicago Police Department," January 13, 2017, at 75:

    a. "One way to cover up police misconduct is when officers affirmatively lie about it or intentionally omit material facts."

    b. "The Mayor has acknowledged that a 'code of silence' exists within CPD, and his opinion is shared by current officers and former high-level CPD officials interviewed during our investigation."

    c. "Indeed, in an interview made public in December 2016, the President of the police officer's union admitted to such a code of silence within CPD, saying 'there's a code of silence everywhere, everybody has it . . . so why would the [Chicago Police] be any different.'"

18. The United States Department of Justice concluded that "a code of silence exists, and officers and community members know it." Report at 75.

19. Defendant Chicago's Chief of Police acknowledged in public comments he made in October 2020 that the "code of silence" continues to exist.

20. The City's above-described "code of silence" was a proximate cause for the actions of the officer defendants to concoct a false story and fabricate evidence that was used to deprive plaintiff of his liberty.

21. The facts of this case provide a striking example of the City's "code of silence" in that the defendant officers have not faced any consequence for preparing official police reports that are blatantly contradicted by video evidence.

22. As a result of the foregoing, plaintiff was deprived of rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States.

23. As a supplemental state law claim against defendant City of Chicago only: as a result of the foregoing, plaintiff was subjected to a malicious prosecution under Illinois law.

24. Plaintiff hereby demands trial by jury.

WHEREFORE, plaintiff requests that appropriate compensatory and punitive damages be awarded against the officer defendants, that appropriate compensatory damages only be awarded against defendant City of Chicago, and that fees and costs be taxed against all defendants.

/s/ <u>Joel A. Flaxman</u>
    Joel A. Flaxman
    ARDC No. 6292818
    Kenneth N. Flaxman
    200 S Michigan Ave Ste 201
    Chicago, IL 60604-2430
    (312) 427-3200
    jaf@kenlaw.com
    *Attorneys for Plaintiff*